971 P.2d 203

**In re: HARRY B.**

**No. 1 CA–JV 98–0008.**

Court of Appeals of Arizona,
Division 1, Department A.

June 23, 1998.

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney, Phoenix, for Appellee State.

Dean W. Trebesch, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for Appellant Juvenile.

GERBER, Judge.

¶ 1   Harry B. ("the juvenile") appeals from the juvenile court's disposition after he admitted a single count of threatening and intimidating, a class 1 misdemeanor. He challenges the court's failure to ask if any promises had induced his admission. He also claims that the court abused its discretion in imposing particular probationary terms. We find no error in the juvenile's admission, but we agree that the court impermissibly delegated its dispositional authority to the juvenile probation officer. We vacate the disposition and remand for further proceedings.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

¶ 2   When the juvenile was eight years of age, the state filed a petition alleging that he had committed two counts of aggravated assault with a deadly weapon, each class 3 felonies, and one count of threatening and intimidating, a class 1 misdemeanor. At the adjudication hearing, the juvenile agreed to admit to the sole count of threatening and intimidating, and the state agreed to seek dismissal of the other charges. The court found a knowing, voluntary, and intelligent admission and a factual basis for it.

¶ 3   The probation officer who made numerous disposition recommendations did not attend the disposition hearing. The juvenile's counsel objected to a number of the recommendations. The court nevertheless adopted the probation officer's recommendations, imposed forty hours of community service, ordered deferred detention, and directed that this then nine-year old child participate in two classes and in TASC if and

when ordered to do so by the probation officer. The juvenile timely appealed.[1]

## II. DISCUSSION

### A. Voluntariness of the Admission

■ ¶ 4 We turn first to the allegation that the juvenile's admission was not voluntary because the court failed to ask if any promises had induced it. When the parties presented the court with a plea agreement at the adjudication hearing, the court asked the juvenile if he understood the right to an adjudication, to confront his accusers, and to remain silent. The judge explained the charge the juvenile had agreed to admit, asked him to establish a factual basis for his admission, and asked if he had taken any medication. The court also said: "And no one forced you or threatened you to make these admissions?" The juvenile said, "No." Because the court failed to ask explicitly if his admission was the result of any *promises*, the juvenile now argues that his admission to the charge was invalid. The juvenile does not contend or show that any promises actually induced the admission.

■ ¶ 5 Juveniles are entitled to the same protections as adults when they admit the allegations of a delinquency petition. *Pinal County Juv. Ac. No. J–985*, 155 Ariz. 249, 250, 745 P.2d 996, 997 (App.1987). Therefore, the *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), standards apply. Under Rule 17.3, Arizona Rules of Criminal Procedure, the court must address the juvenile personally in open court and determine that the juvenile wishes to forego exercise of his constitutional rights and that the plea is voluntary and not a result of force, threats, or promises.

¶ 6 If a pleading defendant is advised of the constitutional privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers, the lack of a judicial finding that no threats, duress, or promises had induced the plea will not invalidate the plea. *State v. Miller*, 110 Ariz. 304, 306, 518 P.2d 127, 129 (1974). "[T]he record need only show that [the plea] was voluntari-

ly made with an understanding of the nature of the charges and the consequences of the plea." *Id.* See also *State v. Gourdin*, 156 Ariz. 337, 338, 751 P.2d 997, 998 (App.1988) (trial judge did not ask if promises or force had induced the plea, but the record revealed defendant was advised of the rights he waived and said that he had read and understood the agreement); *State v. Wesley*, 131 Ariz. 246, 249, 640 P.2d 177, 180 (1982) (if record does not reveal that plea resulted from threats or promises, court's question about free will shows voluntary nature of plea); *State v. Rodriquez*, 25 Ariz.App. 111, 114, 541 P.2d 574, 577 (App.1975) (the court need not use the words of Rule 17.3 if the colloquy supports the voluntariness finding).

¶ 7 The juvenile had already stated that he understood the rights he was waiving and admitted that he had threatened two youngsters with a knife. He said that no one forced or threatened him to admit his actions. The court's failure to ask if any promises had been made did not render the admission involuntary.

### B. Abuse of Judicial Discretion at Disposition

¶ 8 The juvenile next argues that the judge abused his discretion at the disposition by relying on inaccurate information and additionally improperly delegated his decision-making authority to the absent probation officer. We will not disturb the juvenile court's disposition unless we find a clear abuse of discretion. *Maricopa County Juv. Ac. No. JV–110720*, 156 Ariz. 430, 431, 752 P.2d 519, 520 (1988). Although the trial court has broad powers to dispose of the matter, it may not "misapply the law or a legal principle." *Maricopa County Juv. Ac. No. JV–510312*, 183 Ariz. 116, 118, 901 P.2d 464, 466 (App.1995). Because disposition of a juvenile is analogous to the sentencing of an adult, we refer to sentencing law for guidance. *Id.* at 119, 901 P.2d at 467.

■ ¶ 9 As to the first of these two issues, we agree that in ordering a disposition, the court must have accurate information.

---

1. The file reveals that in March, 1998 the juvenile's probation officer filed a petition to revoke

because the mother apparently took the child from this jurisdiction and moved to Texas.

*See State v. Watton,* 164 Ariz. 323, 327, 793 P.2d 80, 84 (1990). The seemingly inaccurate information here concerned the location of the threatening act. The probation officer's report states that police responded to the juvenile's school and spoke to the assistant principal who reported that this juvenile and a companion had pulled a knife on two other students as the students were walking home from school. At the hearing, the juvenile's mother stated that the incident had not happened at school and tried to correct the judge's misconception about location.

¶ 10 Nothing in this record suggests that the location of the incident was important to the court's disposition; what was important was that this juvenile had a knife, showed it to two other children, and made a threatening statement. If the only inaccuracy concerned the location, we would not overturn the disposition on this ground.

■ ¶ 11 The juvenile also argues that the court improperly delegated its dispositional power to the probation officer. "The juvenile court's powers cannot be delegated but must be exercised by the juvenile judge." *Appeal in Navajo County Juv. Ac. No. 92–J–040,* 180 Ariz. 562, 564, 885 P.2d 1127, 1129 (App.1994); *see also In re Santa Cruz v. State Dept. of Corrections,* 8 Ariz.App. 349, 351, 446 P.2d 253, 255 (1968). At the hearing, the judge noted the probation officer's absence and the judge's consequent inability to hear his response to criticism of his recommended disposition. The judge then said, "I can't speculate what they were thinking in terms of their recommendations."

¶ 12 Counsel for the juvenile objected to forty community service hours unless they could be performed at school or at home. She also said that detention and two recommended classes, one an Assaultive Behavior Level I class and the other a Truancy/Youth Improvement Level I class, were inappropriate for a nine-year-old child. Similarly, she suggested that placing the juvenile in the TASC drug-testing program would expose him to much older children and might be counterproductive. The judge nevertheless followed the probation officer's recommendations.

¶ 13 The judge noted that the juvenile had had trouble at school, and had been expelled, and that the possibility of deferred detention should be an incentive to stay out of trouble. The mother interjected that the incident had not occurred at school and expressed concern that the court had relied on inaccurate information. The judge silenced her by telling her that she had already had an opportunity to speak ["You have had your moment to talk, all right?"] and that "[w]hether it's incorrect or not, I have this information." The judge suggested she discuss her concern about the inaccuracy of the information with the absent probation officer.

¶ 14 As to the propriety of the two classes, the judge again said that the juvenile's attorney should talk not to the judge but to the probation officer. The judge promised to acquiesce in the probation officer's recommendation for any change: "[I]f the probation officer wants to change [the classes], wants to recommend changes to me, . . . I'll change my order."

¶ 15 The juvenile judge essentially referred all issues and questions to the probation officer, without showing any independent thought. He noted that if the probation officer could not find an appropriate community service program because of the juvenile's age, he could "simply file a request through the court to delete that recommendation." The judge went on to say that if the attorney was still concerned about a community service placement for this nine-year-old, she should take it up "directly" with the probation officer. In response to further questions, the judge said either to counsel or the juvenile's mother, "I can't answer any questions, Ma'am. You can refer them to the probation officer."

¶ 16 To simply direct counsel and this mother to the probation officer left them little hope that the court would listen to their concerns or correct inaccuracies. Further, it appears that this trial judge was willing to alter the conditions of probation only if the mother and the juvenile's counsel could persuade the absent probation officer to change his recommendations. While probation officers are certainly important and often reliable sources of information, a court that simply rubber-stamps their recommendations

without exercising any reflective discretion of its own abdicates its responsibility and becomes a superfluous adjunct to the processing of cases by probation officers.

¶ 17 We cannot condone this delegation of all reflection and decision-making to the probation officer. The court needs to exercise its independent judgment to formulate an appropriate disposition based upon its own conclusions. The court may well be guided by the probation officer's recommendations, but it must evaluate these recommendations independently. *See DePasquale v. Superior Court,* 181 Ariz. 333, 335–36, 890 P.2d 628, 630–31 (1995) (In awarding custody, the court must weigh the evidence and exercise independent judgment; it cannot allow a psychologist to decide what is in the child's best interest.). *See also State v. Turnbull,* 114 Ariz. 289, 291, 560 P.2d 807, 809 (1977) (need for an "independent decision maker ... other than the correctional official."). *See also* Sheldon Glueck, *The Problem of Delinquency* 580 (1959) ("Th[e] latitude in choice of disposition imposes a tremendous responsibility upon the judge..... *Well-trained probation officers can be of great help to him but it is the judge who must make the actual decision.*"). (Emphasis added.)

¶ 18 We vacate the disposition and remand this matter to the juvenile court so that by hearing or otherwise the juvenile judge may assure himself and the parties of its own independent reasons to adopt the probation officer's recommendations. A copy of the juvenile court's considered judgment should be forwarded to this court and counsel within sixty days of the date of this order.

### III. CONCLUSION

¶ 19 For the above reasons, we affirm the court's finding that the juvenile's admission was knowing, intelligent, and voluntary. We vacate and remand for further proceedings regarding disposition.

GARBARINO, P.J., and TOCI, C.J., concur.