IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2001-0537 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| VICTOR DAVID RODRIGUEZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR-20012298

Honorable Frank Dawley, Judge Pro Tempore
Honorable Richard D. Nichols, Judge

AFFIRMED

---

Terry Goddard, Arizona Attorney General
  By Diane M. Acosta                                                                                    Tucson
                                                                                    Attorneys for Appellee


Susan A. Kettlewell, Pima County Public Defender
  By Nancy F. Jones                                                                                    Tucson
                                                                                    Attorneys for Appellant

---

P E L A N D E R, Presiding Judge.


¶1        A jury found appellant Victor Rodriguez, a juvenile who was prosecuted as an

adult, guilty of possession of a prohibited weapon, and, after Rodriguez waived his right to a jury

trial, the trial court held a bench trial and found him guilty of possession of a deadly weapon by

a prohibited possessor. The court placed Rodriguez on intensive probation for four years, conditioned on a four-month jail term.

¶2 On appeal, Rodriguez contends the trial court lacked personal jurisdiction to try him as an adult, arguing the state had failed to file a notice of his "chronic felony offender" status under A.R.S. § 13-501(D) and to prove he was such an offender, as § 13-501(E) requires. Relying primarily on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), Rodriguez also argues that §§ 13-501(A)(6) and 13-501(E) are unconstitutional because they violate a juvenile offender's rights to a jury trial and due process. Finally, Rodriguez asserts that the trial court erred in denying his pretrial motion to suppress. None of the issues raised warrants reversal.

## BACKGROUND

¶3 The pertinent facts underlying Rodriguez's convictions, though later detailed in ¶¶35-36, *infra*, are essentially undisputed. While searching Rodriguez's residence with his mother's consent, officers observed him in close proximity to a firearm found under a mattress in one of the bedrooms. The officers seized the weapon and some ammunition and arrested Rodriguez, who later was indicted as an adult on charges of possession of a prohibited weapon and possession of a deadly weapon by a prohibited possessor. The latter charge was based on Rodriguez's having had several prior juvenile delinquency adjudications.

¶4 Before trial, Rodriguez, then sixteen years old, moved to dismiss the charges for lack of jurisdiction, arguing that the state's failure to comply with § 13-501(D)'s notice requirement precluded personal jurisdiction over him as an adult offender. Rodriguez asked the trial court to dismiss the charges and allow the case to proceed in juvenile court. He also filed a

2

motion to suppress, arguing that the officers had lacked probable cause to seize the firearm and ammunition.

¶5 After a joint hearing on both motions, the trial court denied the motion to dismiss without prejudice but set a hearing, pursuant to § 13-501(E), to determine whether Rodriguez qualified as a "chronic felony offender" under § 13-501(A)(6) and (G)(2). The trial court also denied the motion to suppress, finding that the officers had had legitimate safety concerns and had acted reasonably under the circumstances in seizing the gun and ammunition.

¶6 Rodriguez filed a second motion to dismiss, challenging the constitutionality of § 13-501(A)(6), which requires that certain juvenile "chronic felony offenders" be tried as adults. He argued that the statute allows for "enhanced punishment based on constitutionally infirm prior adjudications of guilt" and that prior juvenile adjudications have insufficient procedural safeguards to subject a juvenile offender to prosecution and punishment as an adult, as authorized by § 13-501. After another hearing, the trial court denied Rodriguez's second motion to dismiss, finding § 13-501(A)(6) constitutional, and further determined that Rodriguez was a chronic felony offender subject to prosecution as an adult. The court also rejected Rodriguez's renewed argument that the court lacked personal jurisdiction over him, finding that, although the state should have filed a chronic felony offender notice with the indictment, Rodriguez had suffered no prejudice and was properly subject to prosecution as an adult.

## DISCUSSION

### I. Jurisdiction

¶7 Rodriguez reiterates on appeal that the trial court should have dismissed the charges on the ground that it lacked personal jurisdiction over him because of the state's failure to file a

notice pursuant to § 13-501(D).[1] *See State v. Marks*, 186 Ariz. 139, 142, 920 P.2d 19, 22 (App. 1996) (any flaw in proceedings transferring juvenile offender to adult criminal division of superior court deprives that division of personal jurisdiction, not subject matter jurisdiction). "The decision whether to grant a motion to dismiss is within the sound discretion of the trial court, which will not be disturbed absent an abuse of discretion." *State v. Pecard*, 196 Ariz. 371, ¶24, 998 P.2d 453, ¶24 (App. 1999). But we review de novo any legal issues involving statutory interpretation and jurisdiction. *See Thomas v. Thomas*, 203 Ariz. 34, ¶7, 49 P.3d 306, ¶7 (App. 2002).

¶8        "In those instances specified in section 13-501(A), the county attorney is required to file the charges in adult court." *In re Timothy M.*, 197 Ariz. 394, ¶23, 4 P.3d 449, ¶23 (App. 2000). Under § 13-501(A)(6), the "county attorney shall bring a criminal prosecution against a juvenile in the same manner as an adult if the juvenile is fifteen, sixteen or seventeen years of age and is accused of . . . [a]ny felony offense committed by a chronic felony offender." Section 13-501(G)(2) defines a "chronic felony offender" as "a juvenile who has had two prior and separate adjudications and dispositions for conduct that would constitute a historical prior felony conviction if the juvenile had been tried as an adult." Subsections (D) and (E) of § 13-501 provide:

> **D**. At the time the county attorney files a complaint or indictment the county attorney shall file a notice stating that the juvenile is a chronic felony offender. Subject to subsection E of this

---

[1]The superior court's subject matter jurisdiction is not challenged or otherwise at issue here. Generally, that court has such jurisdiction over any criminal case in which the defendant is charged by indictment or information with a felony. *See* Ariz. Const. art. II, § 30; art. VI, § 14(4); A.R.S. § 12-123; *see generally In re Timothy M.*, 197 Ariz. 394, ¶24, 4 P.3d 449, ¶24 (App. 2000); *In re Cameron T.*, 190 Ariz. 456, 461-62, 949 P.2d 545, 550-51 (App. 1997); *State v. Marks*, 186 Ariz. 139, 920 P.2d 19 (App. 1996).

section, the notice shall establish and confer jurisdiction over the juvenile as a chronic felony offender.

E. Upon motion of the juvenile the court shall hold a hearing after arraignment and before trial to determine if a juvenile is a chronic felony offender. At the hearing the state shall prove by a preponderance of the evidence that the juvenile is a chronic felony offender. If the court does not find that the juvenile is a chronic felony offender, the court shall transfer the juvenile to the juvenile court pursuant to § 8-302. If the court finds that the juvenile is a chronic felony offender or if the juvenile does not file a motion to determine if the juvenile is a chronic felony offender, the criminal prosecution shall continue.

¶9 Rodriguez claims that the state's failure to file the mandatory notice specified in § 13-501(D) deprived the superior court of personal jurisdiction to try him as an adult.[2] Conceding that it did not "explicitly comply with subsection (D)" because it did not file a chronic-felony-offender notice with the indictment against Rodriguez, the state nonetheless argues that it "substantially complied" with the statute by filing an interim complaint in juvenile court that referred to § 13-501(A)(6) on its face. The state also contends Rodriguez suffered no prejudice from the lack of notice because the trial court held a chronic-felony-offender status hearing, pursuant to § 13-501(E), before proceeding with the prosecution of Rodriguez as an adult.

¶10 Although the language of § 13-501(D) is relatively clear, its meaning and effect are not. For example, that subsection expressly states that "the notice shall establish and confer jurisdiction over the juvenile as a chronic felony offender," but that provision is "[s]ubject to

_____

[2]Although Rodriguez refers to "adult court" as an improper forum for the prosecution against him, "the superior court is not a system of jurisdictionally segregated departments but rather a 'single unified trial court of general jurisdiction.'" *Marks*, 186 Ariz. at 142, 920 P.2d at 22, *quoting Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 102, 907 P.2d 67, 71 (1995); *see also* Ariz. Const. art. VI, §§ 14, 15; A.R.S. § 12-123. Therefore, any references to "adult" or "juvenile" court merely refer to the type of proceeding before the superior court or, where established, specialized divisions of the court.

5

subsection (E)." § 13-501(D). And subsection (D) does not state that if no such notice is filed, the superior court lacks personal jurisdiction to try the juvenile offender as an adult once a hearing is held and a chronic-felony-offender finding is made under subsection (E). Accordingly, we must look beyond the language of subsection (D) and consider other factors in determining its meaning and effect.

¶11    If statutory language is unclear, we "turn to other factors, including 'the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose.'" *Norgord v. State ex rel. Berning*, 201 Ariz. 228, ¶7, 33 P.3d 1166, ¶7 (App. 2001), *quoting Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8 (App. 2001). And, even when statutory language, read in isolation, might be susceptible to a particular construction, we employ a common sense approach, interpreting the statute "by reference to its stated purpose and . . . the system of related statutes of which it forms a part." *Goddard v. Superior Court*, 191 Ariz. 402, ¶8, 956 P.2d 529, ¶8 (App. 1998). Ultimately, "[o]ur objective in interpreting a statute is to give effect to the legislative intent behind the statute and, when possible, to harmonize all its sections." *State v. Razo*, 195 Ariz. 393, ¶3, 988 P.2d 1119, ¶3 (App. 1999); *see also State v. Wagstaff*, 164 Ariz. 485, 491, 794 P.2d 118, 124 (1990) ("We strive to construe a statute and its subsections as a consistent and harmonious whole.").

¶12    The legislature enacted § 13-501 in order to implement Proposition 102 (the "Juvenile Justice Initiative"), which Arizona voters passed in 1996. *See generally Andrews v. Willrich*, 200 Ariz. 533, ¶¶1, 10-11, 29 P.3d 880, ¶¶1, 10-11 (App. 2001); *In re Victoria K.*, 198 Ariz. 527, ¶23, 11 P.3d 1066, ¶23 (App. 2000). The Initiative amended the Arizona Constitution and essentially mandated the statutory scheme set forth in § 13-501. *See* Ariz. Const. art. IV,

pt. 2, § 22(1) (eff. Dec. 6, 1996) (mandating in part that "[j]uveniles 15 years of age or older who are chronic felony offenders as defined by statute shall be prosecuted as adults" and, with certain exceptions, "[u]pon conviction . . . shall be subject to the same laws as adults"); Ariz. Const. art. VI, § 15 (eff. Dec. 6, 1996) ("The jurisdiction and authority of the courts of this state in all proceedings and matters affecting juveniles shall be as provided by the legislature or the people by initiative or referendum.").

¶13        The constitutional amendments effected by passage of Proposition 102 included the following:

> In order to preserve and protect the right of the people to justice and public safety, and to ensure fairness and accountability when juveniles engage in unlawful conduct, the legislature, or the people by initiative or referendum, shall have the authority to enact substantive and procedural laws regarding all proceedings and matters affecting such juveniles.

Ariz. Const. art. IV, pt. 2, § 22. "The overall intent of Prop. 102 was to make possible faster, more effective, and in some cases[,] more stringent responses to juvenile crime." *In re Cameron T.*, 190 Ariz. 456, 459, 949 P.2d 545, 548 (App. 1997); *see also id.* at 461, 949 P.2d at 550 (Proposition 102 was "clearly intended to speed the pace and augment the effectiveness of the juvenile justice system in Arizona, and to respond more stringently to juvenile crime when appropriate.").

¶14        In light of that background and purpose, and in an attempt to harmonize subsections (D) and (E) and apply a common sense meaning to them, we conclude that the controlling inquiry in determining personal jurisdiction under those subsections is whether the juvenile is a chronic felony offender. The obvious, primary purpose of subsection (D)'s notice requirement is to notify the juvenile offender that the state seeks to prosecute him or her as an adult because of his or her

7

alleged chronic-felony-offender status.[3]  If a notice is filed with the indictment pursuant to subsection (D) and the juvenile does not request a hearing under subsection (E), the notice itself "establish[es] and confer[s] jurisdiction over the juvenile as a chronic felony offender."  § 13-501(D).  But, if that notice is not filed with the indictment and the juvenile nonetheless receives a hearing pursuant to subsection (E) and is found to be a chronic felony offender, as happened here, we believe that finding suffices to establish the court's personal jurisdiction over the juvenile as an adult.

¶15     Thus, although the state's failure to file the notice with the indictment violated the directive of § 13-501(D), that failure did not ultimately deprive the superior court of personal jurisdiction over Rodriguez for purposes of the state's prosecution of him as an adult.  Despite the lack of notice under subsection (D), Rodriguez was well aware of the state's allegation and received a hearing pursuant to subsection (E) at which the state had to prove, and the trial court had to find, that he in fact was a chronic felony offender as defined in § 13-501(G)(2).  And, under that scenario, the trial court's finding that Rodriguez had that status "establish[ed] and confer[ed] jurisdiction" to proceed with the prosection against him as an adult.  § 13-501(D), (E).

¶16     Moreover, although § 13-501(D) includes the mandatory language, "shall," "[o]ur supreme court has ruled[, in *State v. Vassar*, 111 Ariz. 487, 489, 533 P.2d 544, 546 (1975),] that a violation of mandatory language, when no sanction is provided, requires a showing of prejudice before imposing sanctions or remedial action."  *Borchers v. Arizona Bd. of Pardons & Paroles*,

---

[3]We note that, even though the state failed to file formal notice with the indictment pursuant to A.R.S. § 13-501(D), the state's interim complaint filed in juvenile court several weeks before the indictment was issued specifically referred to § 13-501(A)(6).  That complaint arguably put Rodriguez on notice of the state's allegation that he was a chronic felony offender subject to mandatory prosecution as an adult under § 13-501(A).

8

174 Ariz. 463, 467, 851 P.2d 88, 92 (App. 1992). Therefore, the state's failure to file the requisite notice does not mandate reversal, absent a showing that Rodriguez was thereby prejudiced. *See State v. Jones*, 47 P.3d 783, 791 (Kan. 2002) (failure to give statutorily required notice to juvenile's parents of hearing to authorize prosecution of juvenile as adult not reversible error when no prejudice shown, juvenile received adequate notice of hearing and its purpose, hearing "was not adjudicatory but dispositional," and juvenile "was present and represented by counsel at all critical stages of the proceedings").

¶17 Again, Rodriguez received the § 13-501(E) hearing to which he was entitled and, consequently, as the trial court observed, suffered no prejudice from the state's failure to file a notice with the indictment. In addition, as noted above, the trial court's finding that Rodriguez was a chronic felony offender established the court's jurisdiction over him as an adult. Accordingly, the trial court did not err in denying Rodriguez's motion to dismiss for lack of personal jurisdiction.

## II. Sufficiency of the Evidence

¶18 Rodriguez next contends the state did not satisfy its burden of proving he was a chronic felony offender at the § 13-501(E) hearing. Whether Rodriguez qualified as such was a finding of fact for the trial court to make, and "[w]e defer to the trial court's factual findings that are supported by the record and not clearly erroneous." *State v. Rosengren*, 199 Ariz. 112, ¶9, 14 P.3d 303, ¶9 (App. 2000). We do not reweigh the evidence on appeal and will overturn the trial court's findings only if no substantial evidence supports them. *See State v. Fernane*, 185 Ariz. 222, 224, 914 P.2d 1314, 1316 (App. 1995); *see also State v. Medrano*, 23 P.3d 836, 838

9

(Kan. 2001) ("The standard for reviewing the decision to authorize prosecution as an adult is whether the decision is supported by substantial evidence.").

¶19 Two weeks before the hearing, the state filed copies of several juvenile court minute entries for purposes of "demonstrat[ing] [Rodriguez's] status as a 'chronic felony offender' pursuant to A.R.S. § 13-501." The minute entries reflected that Victor Rodriguez, born January 28, 1985, was adjudicated delinquent in January 1999 for burglary and theft-related charges and again in July 1999 for weapons-related charges. The July minute entry also reflected the juvenile court's warning to Rodriguez that he was a "repeat felony juvenile offender," subject to prosecution as an adult if he were to be arrested for another felony offense. At the § 13-501(E) hearing, defense counsel told the trial court he had received "documentation from the State in the form of minute entries from Juvenile Court pretty much verifying that Mr. Rodriguez would qualify as a chronic felony offender as defined by statute." Counsel then stated, "I don't think that I can say that those minute entries are in some way inaccurate." The court ultimately found that Rodriguez "qualif[ied] as a chronic offender."

¶20 As Rodriguez points out, at the § 13-501(E) hearing, the state did not introduce the juvenile court minute entries into evidence, the trial court did not take judicial notice of them, and the parties did not stipulate to any facts. Rodriguez now argues that, before the trial court could properly classify him as a chronic felony offender, the state was required to present certified copies of his juvenile court adjudications and prove unequivocally that he was the same Victor Rodriguez who had committed the prior crimes. He claims that is the "proper procedure to establish a prior conviction[] for enhancement purposes." *See State v. Hurley*, 154 Ariz. 124, 132, 741 P.2d 257, 265 (1987). But the trial court was not enhancing his sentence based on the

10

prior adjudications. Rather, the court was making a pretrial factual finding on Rodriguez's chronic-felony-offender status.

¶21 Moreover, Rodriguez did not object to either the nature or sufficiency of the state's evidence. In fact, he essentially agreed the juvenile court minute entries established his chronic-felony-offender status and did not contest the fact that he was the same Victor Rodriguez named in those minute entries. He has therefore waived any argument that the state's evidence under § 13-501(E) was inadequate. *See State v. Anderson*, 174 Ariz. 431, 433, 850 P.2d 669, 671 (1993); *cf. Hurley*, 154 Ariz. at 132, 741 P.2d at 265 ("documentation requirement" for sentence enhancement purposes excused "if defendant admits the prior conviction"). In addition, Rodriguez conceded in a previously filed motion that he was born on January 28, 1985, and had been adjudicated delinquent in January 1999 on burglary and theft charges and again in July 1999 on weapons-related charges, confirming the information reflected in the juvenile court minute entries the state had filed. In sum, the record adequately supports the trial court's finding that Rodriguez "qualif[ied] as a chronic offender." *See Rosengren*.

### III. Constitutional Claims

#### A. Section 13-501(A)(6)

¶22 As he did below, Rodriguez contends § 13-501(A)(6) is unconstitutional "because it allows for enhanced punishment based on constitutionally infirm prior adjudications of guilt," violating his rights to due process and to a jury trial. "We review the validity of a statute *de novo* and, if possible, construe it so as to uphold its constitutionality." *In re Leon G.*, 204 Ariz. 15, ¶9, 59 P.3d 779, ¶9 (2002). And, "[w]e will not overturn an act of the legislature unless we are

'satisfied beyond a reasonable doubt' that the statute fails to comply with the Constitution." *Id.*, *quoting State v. Gastelum*, 75 Ariz. 271, 273, 255 P.2d 203, 204 (1953).

¶23　　　　　Relying on *Apprendi* and its progeny, Rodriguez asserts that "the effect of the Arizona statute is to authorize judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted upon a finding that a juvenile fifteen years of age or older is a chronic felony offender."　According to Rodriguez, juvenile adjudications are meant to be rehabilitative, not punitive, and therefore lack the "procedural safeguards," including the right to a jury trial, that surround adult convictions.　Citing *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), he further argues such "constitutionally infirm" juvenile adjudications therefore cannot be used to enhance his punishment by subjecting him to prosecution as an adult.

¶24　　　　　In *Tighe*, the adult defendant pled guilty to several federal charges.　Based partly on the defendant's prior, nonjury-juvenile adjudication, the sentencing court increased the sentence on one of the counts beyond the ten-year statutory maximum to fifteen years, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e), and increased the sentence on another count approximately four years beyond its otherwise applicable statutory maximum.　On review, the Ninth Circuit distinguished adult convictions and juvenile adjudications, noting that the latter generally lack the "procedural necessities of a jury trial and proof beyond a reasonable doubt." 266 F.3d at 1194.　The court concluded, therefore, that nonjury-juvenile adjudications did not fall within "*Apprendi*'s narrow 'prior conviction' exception." *Id.*; *see also Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63, 147 L. Ed. 2d at 455 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

12

submitted to a jury, and proved beyond a reasonable doubt."). Accordingly, the Ninth Circuit held, "the district court violated *Apprendi* when, at sentencing, it increased [two of] Tighe's penalt[ies] beyond the prescribed statutory maximum based on an adjudication which denied [defendant] the right to a jury trial." *Tighe*, 266 F.3d at 1195.[4]

¶25 We find *Tighe* inapposite and unhelpful in determining the constitutionality of § 13-501(A)(6). Having pled guilty and facing sentencing, the adult defendant in *Tighe* was subject to and received prison terms substantially longer than the otherwise applicable statutory maximums based in part on his prior juvenile adjudication. In contrast, § 13-501(A)(6) does not directly relate to sentencing, "prescribed statutory maximum[s]," or potential sentence enhancements. *Tighe*, 266 F.3d at 1195. Rather, it obligates the state to prosecute as adults a certain class of juvenile offenders.

¶26 Although we agree with Rodriguez that being prosecuted as an adult potentially involves "more severe consequences," we do not agree that the mere exposure to adult prosecution constitutes "enhanced punishment" or offends *Apprendi*. Rather, as the Ninth Circuit has stated:

---

[4]We note that several courts have rejected the Ninth Circuit's analysis and conclusion in *Tighe*. *See*, *e.g.*, *United States v. Smalley*, 294 F.3d 1030, 1033 (8th Cir. 2002) ("juvenile adjudications can rightly be characterized as 'prior convictions' for *Apprendi* purposes," and "district court did not err in increasing [defendant's] sentence based on his prior juvenile adjudications"); *People v. Bowden*, 125 Cal. Rptr. 2d 513, 516, 517 (Cal. Ct. App. 2002) (in rejecting defendant's contention that "because a person previously tried as a juvenile had no right to a jury trial in juvenile court, the prior juvenile adjudication cannot constitutionally be treated as a prior conviction for the purpose of [California's] Three Strikes law," the court stated: "We agree with the *Tighe* dissent that the *Tighe* majority made a 'quantum leap' from certain language in a Supreme Court opinion and erroneously concluded prior juvenile adjudications are not prior convictions."); *State v. Hitt*, 42 P.3d 732, 740 (Kan. 2002) ("Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications."). As far as we can tell, no other court has followed *Tighe*.

13

"There is no analogy[]" between "the transfer statute [mandating that juveniles with certain prior adjudications be tried as adults] [and] statutes increasing the potential penalties in adult criminal cases . . . . The transfer statute does not *per se* increase punishment; it merely establishes 'a basis for district [adult] court jurisdiction of prosecutions to which it applies.'" *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000), *quoting United States v. David H.*, 29 F.3d 489, 491 (9th Cir. 1994).[5] Rodriguez's prior juvenile adjudications—whether "constitutionally infirm" or not, an issue we need not and do not reach—did not serve as the basis for any increased punishment. Therefore, § 13-501(A)(6) is not constitutionally flawed.

### B. Section 13-501(E)

¶27 Relying again on *Apprendi*, *Tighe*, and *Commonwealth v. Quincy Q.*, 753 N.E.2d 781 (Mass. 2001), Rodriguez next argues § 13-501(E) is unconstitutional because it subjects a juvenile defendant to enhanced punishment (prosecution as an adult) based on a judge, not a jury, finding that the juvenile qualifies as a chronic felony offender. Because he did not challenge § 13-501(E) below, Rodriguez has waived this argument on appeal.[6] *See State v. Bolton*, 182 Ariz. 290, 297, 896 P.2d 830, 837 (1995). Even if not waived, however, Rodriguez's argument is without merit. *See Fuenning v. Superior Court*, 139 Ariz. 590, 594, 680 P.2d 121, 125 (1983) (in our discretion we can address constitutional issues first raised on appeal); *cf. In re Kyle M.*, 200 Ariz. 447, ¶2, 27 P.3d 804, ¶2 (App. 2001).

---

[5]The Ninth Circuit also noted that "[t]here is no constitutional right to be tried as a juvenile, nor does the Constitution require that juvenile proceedings be by indictment or jury trial." *United States v. Juvenile*, 228 F.3d 987, 990 (9th Cir. 2000); *see also Andrews v. Willrich*, 200 Ariz. 533, ¶23, 29 P.3d 880, ¶23 (App. 2001).

[6]In its answering brief, the state did not address Rodriguez's waiver of this argument.

14

¶28        In *Quincy Q.*, the Massachusetts Supreme Court analyzed that state's "youthful offender" statute, which allowed a juvenile defendant to be sentenced as an adult if adjudicated a "youthful offender." The court found *Apprendi* applicable to that statute, stating:

> Similar to the New Jersey hate crime statute [in *Apprendi*], the youthful offender statute authorizes judges to increase the punishment for juveniles convicted of certain offenses beyond the statutory maximum otherwise permitted for juveniles, if the [statutory] requirements . . . have been satisfied. We recognize that a juvenile court system, in which juveniles are given preferential treatment, is not constitutionally required. However, once the Legislature enacted a law providing that the maximum punishment for delinquent juveniles is commitment to the Department of Youth Services (department) for a defined time period any facts, including the requirements for youthful offender status, that would increase the penalty for such juveniles must be proved to a jury beyond a reasonable doubt.

*Quincy Q.*, 753 N.E.2d at 789 (citations omitted).

¶29        *Quincy Q.* is distinguishable. In Massachusetts, if a minor is adjudicated a "youthful offender" in juvenile court proceedings, the juvenile court may then enhance the minor's punishment. *Id.* at 788-90. Thus, under that system, a juvenile "youthful offender" is not transferred to adult court but, rather, faces an enhanced sentence in juvenile court following a determination of guilt in that forum. *See State v. Hartpence*, 42 P.3d 1197, 1205 (Kan. Ct. App. 2002) (distinguishing *Quincy Q.* because "the adjudication [there] was resolved in juvenile court proceedings and then enhancement of sentence was applied following the resolution in juvenile court"). And, as the state correctly points out, "the Massachusetts statute authorizes juvenile court judges to increase the punishment for juveniles who are adjudicated 'youthful offenders' *beyond the statutory maximum otherwise permitted for juveniles*, and for that reason, the Massachusetts Supreme Court found that *Apprendi* applied to their 'youthful offender' statute."

15

¶30    The Massachusetts "youthful offender" system differs from § 13-501(E), which generally mandates the prosecution of certain juveniles as adults. Unlike the Massachusetts statute, § 13-501(E) provides for a preliminary, non-adjudicatory finding to determine whether a juvenile offender should be prosecuted as an adult or juvenile. It does not allow a judge to enhance a juvenile offender's sentence upon a judge-made finding that he or she is a "chronic felony offender"; it simply allows the juvenile's further prosecution as an adult. In rejecting an *Apprendi* challenge to a similar statutory scheme in Illinois, the court stated:

> A hearing under [the Illinois statute] is dispositional, not adjudicatory. That is, the hearing determines not the minor's guilt but the forum in which his guilt may be adjudicated. Thus, although the juvenile court made findings that exposed him to a greater sanction, defendant had no due process right to have a jury make those findings beyond a reasonable doubt.

*People v. Beltran*, 765 N.E.2d 1071, 1076 (Ill. App. Ct. 2002) (citation omitted).

¶31    Likewise, the Kansas Supreme Court stated the following about that state's statutory scheme for prosecuting juveniles as adults:

> *Apprendi* reviewed a law permitting a judge, after making a factual finding about the crime, to sentence a defendant beyond the statutory sentence authorized by the jury's verdict. In the present case, the decision under [the Kansas statute] does not follow a finding of guilt for any crime. The decision under [that statute] determines whether there is substantial competent evidence to authorize prosecution of a juvenile as an adult under the applicable criminal statute. If that decision is in the affirmative, the juvenile will be exposed to the statutory maximum sentence under the applicable criminal statute, which in most cases will exceed the statutory maximum disposition in the juvenile system. However, the juvenile tried as an adult will be subjected to the statutory maximum sentence under the applicable criminal statute only after a jury has determined his or her guilt beyond a reasonable doubt. The determination under [the Kansas statute] does not involve guilt or innocence, but involves the determination of which system will

16

be appropriate for a juvenile offender. As indicated above, we conclude that the Kansas procedure for authorizing adult prosecution under [the statute] does not violate the Sixth and Fourteenth Amendments to the United States Constitution.

*Jones*, 47 P.3d at 797-98. We reach the same conclusion here concerning § 13-501.

¶32        We also find *Tighe* inapposite because, as noted above, the adult defendant there had pled guilty and been sentenced to statutorily enhanced prison terms. In contrast, § 13-501(E) requires a finding of chronic-felony-offender status to be made at the beginning of the criminal process, before any verdict or determination of guilt.[7] Such a finding does not result in any confinement or other punishment, the nature and duration of which would be entirely speculative at that time. And it bears repeating that a grand jury returned the indictment against Rodriguez and that he was exposed to the statutory maximum sentences applicable to his convictions only after he was found guilty beyond a reasonable doubt at trial. No separate, post-trial finding by a judge exposed Rodriguez to an enhanced sentence exceeding those statutory maximums.

¶33        In sum, § 13-501(E) is not a sentence enhancement scheme and, therefore, does not implicate *Apprendi*. *See Hartpence*, 42 P.3d at 1205 ("Here, we are dealing with a determination of in which court a juvenile will be tried for resolution of his or her case and not whether an individual will be sentenced beyond the statutory maximum. This decision is akin to a

---

[7]Rodriguez argues this distinction elevates form over substance and would allow the legislature to avoid the requirements of *Apprendi* by transforming what really are sentence-enhancement factors that a jury must find beyond a reasonable doubt into preliminary findings of fact made by a judge before trial. But § 13-501 was not enacted to manipulate or evade *Apprendi* requirements. And *Apprendi* clearly focused on factual findings that could expose a defendant, after a finding of guilt, to a sentence that exceeds the otherwise prescribed statutory maximum. *See Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S. Ct. 2348, 2365, 147 L. Ed. 2d 435, 457 (2000) ("[D]oes the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"); *see also State v. Brown*, No. 2 CA-SA 2003-0003, 2003 WL 21205259, ¶¶10, 20 (Ariz. Ct. App. May 23, 2003).

17

jurisdictional determination."). A judge's finding that a juvenile is a chronic felony offender does not subject that juvenile to enhanced punishment; it subjects the juvenile to the adult criminal justice system. As such, § 13-501(E) is not constitutionally defective under *Apprendi*.

## IV. Motion to Suppress Evidence

¶34     Rodriguez lastly argues that the trial court erred by denying his motion to suppress the firearm and ammunition found in his home. We review a trial court's ruling on a motion to suppress for a clear abuse of discretion, *State v. Sanchez*, 200 Ariz. 163, ¶5, 24 P.3d 610, ¶5 (App. 2001), viewing the evidence presented at the suppression hearing and reasonable inferences therefrom in the light most favorable to upholding the ruling. *State v. Riley*, 196 Ariz. 40, ¶10, 992 P.2d 1135, ¶10 (App. 1999).

¶35     At the suppression hearing, a probation officer, Quan, and a police officer, Corrales, testified about the search of Rodriguez's house. Quan testified that he and Corrales had gone to the house looking for Rodriguez's sister, who had absconded from juvenile intensive probation, and Rodriguez's mother had consented to their searching the house for her daughter. When Quan entered one of the bedrooms, he saw Rodriguez lying on one bed and what he believed to be the butt end of a long rifle sticking out from under the mattress of a second bed. Due to safety concerns, Quan immediately left the room to tell Corrales what he had seen.

¶36     Corrales testified that, after Quan had told him about the gun, Corrales had gone to the bedroom and observed Rodriguez sitting on the second bed where Quan had seen the weapon. Standing outside the bedroom for safety reasons, Corrales asked Rodriguez to come out, which he did. Corrales then went in the bedroom. Although he could not see a weapon at that time, he lifted the mattress on the second bed and found a shotgun and some ammunition. Noting

18

that the shotgun obviously "appeared to be" illegal because its barrel had been cut, Corrales took custody of the weapon for "safety reasons" and determined that it had a shortened barrel and no serial number.

¶37　　　In support of his motion to suppress, Rodriguez argued that the officers had lacked probable cause to seize the firearm until after they had taken it and Corrales had then seen that its barrel was too short and the serial number had been removed. The state countered that the officers had had legitimate safety concerns that justified the seizure of the gun. The trial court found that

> [the officers] had a right to be [in the house] based on consent. They observed a weapon they had the right to be concerned about. And they seized it without probable cause to believe that a crime had been committed; mere existence and presence of the gun. I find that to be a reasonable series of events, reasonable behavior by the police.

The trial court concluded that "[i]t was not unreasonable for the officers to take the weapon for safety purposes and without probable cause to believe that a crime was committed" and, therefore, denied Rodriguez's motion to suppress.

¶38　　　"[T]he police may, under certain circumstances, make a warrantless protective sweep of a residence if they are lawfully inside the residence [and they] reasonably perceive an immediate danger to their safety." *State v. Kosman*, 181 Ariz. 487, 491, 892 P.2d 207, 211 (App. 1995); *see also Maryland v. Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990). Rodriguez contends the officers had no reasonable grounds to fear for their safety because "[t]here were no circumstances to suggest any basis that [Rodriguez] would present a danger." We disagree. Quan initially saw Rodriguez and what appeared to be a rifle in the same room, and Rodriguez's sister was still at large. After Quan left the bedroom and before Corrales entered it, Rodriguez had moved from one bed to the other, and the rifle butt was no longer visible. We

19

agree with the trial court that the officers had a legitimate "right to be concerned about" the presence of such a weapon, even without initially suspecting that the gun was illegal or that Rodriguez was a prohibited possessor.

¶39 The trial court rationally could conclude from the totality of the circumstances here that the officers "reasonably perceive[d] an immediate danger to their safety," *Kosman*, 181 Ariz. at 491, 892 P.2d at 211, and that Corrales was justified in lifting the mattress and temporarily seizing the weapon. *See, e.g., United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979) (officer's temporary seizure of loaded weapon found beneath mattress during search of residence was "reasonable precaution to assure the safety of all persons on the premises during the search"); *People v. Gallegos*, 117 Cal. Rptr. 2d 375, 388 n.13 (Cal. Ct. App. 2002) (officer's temporary seizure of guns found under bed during residential search "was not unreasonable within the meaning of the Fourth Amendment" even though "it was not 'immediately apparent' that they were contraband").[8] And the shotgun's seizure and removal were justified by Corrales's observation that it was an illegal weapon. *See* A.R.S. §§ 13-3101(A)(7)(d); 13-3102(A)(3), (J); *see also Malachesen*, 597 F.2d at 1235; *Gallegos*, 117 Cal. Rptr. 2d at 389-90. Thus, the trial court did not clearly abuse its discretion in denying Rodriguez's motion to suppress. *Sanchez*.

---

[8]*See also United States v. Humphrey*, 759 F.2d 743, 748 (9th Cir. 1985) (once Coast Guard officers who boarded ship learned about firearms below deck, limited protective search for and temporary seizure of guns was justified by security considerations); *United States v. Miles*, 82 F. Supp. 2d 1201, 1209 (D. Kan. 1999) (once lawfully inside apartment, officers "were free to seize, at least momentarily for their safety and the safety of others in the area, the firearm which was in plain view"); *State v. Cotten*, 879 P.2d 971, 979-80 (Wash. Ct. App. 1994) (officers' seizure of shotgun found in residence during consensual search for evidence of bombing, although beyond scope of consent, was reasonable for Fourth Amendment purposes, even though "it was not immediately apparent to the FBI agents that the shotgun was evidence of any crime").

**DISPOSITION**

**¶40**        Rodriguez's convictions and probationary term are affirmed.

_____
JOHN PELANDER, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge



_____
WILLIAM E. DRUKE, Judge (Retired)