147 P.3d 306 (2006)
2006 OK CIV APP 138
In the Matter of the ADOPTION OF R.L.A., a Minor Child,
Jeremy Dewayne Overton and Jennifer Lynn Overton, Petitioners/Appellants,
v.
William Eagle Lee Arpoika, Respondent/Appellee.
No. 103,076.
Court of Civil Appeals of Oklahoma, Division No. 3.
September 22, 2006.
Noel K. Tucker, Phillip J. Tucker, Melodie Martin-Farris, The Tucker Law Firm, Edmond, OK, for Petitioners/Appellants.
Donald T. Bogan, Amelia S. Pepper, Drew T. Palmer, licensed legal intern, University of Oklahoma Legal Clinic, Norman, OK, for Respondent/Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 4.

OPINION
ADAMS, Judge.
¶ 1 The mother (Mother) and stepfather (collectively, Petitioners) of the minor child R.L.A. appeal the denial of their Application For Order Determining Child Eligible For Adoption Without Consent of Natural Parent, arguing the trial court incorrectly applied the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901 et seq., and required them to prove the factual bases for their application by proof beyond a reasonable doubt. Because we conclude the heightened burden of proof required by 25 U.S.C. § 1912(f) applies only to the federally required determination "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," we reverse the trial court's order and remand the case for determination based upon the correct burden of proof.
¶ 2 Respondent (Father), Mother, and R.L.A. lived together from July of 2000 until *308 November of 2002. Mother filed for divorce from Father in March of 2003. Father was incarcerated for several violations of law beginning in June of 2003 under a delayed sentencing program. A divorce was granted in July of 2003, and Mother received custody of R.L.A. Father was ordered to have no visitation with R.L.A. "due to his incarceration with the Department of Corrections."
¶ 3 In September of 2003, when a decree memorializing an agreement setting child support was filed, Father was still incarcerated. He was released from custody and placed on probation in October of 2003. According to his testimony, after his release he worked for room and board on a family member's ranch. Father was re-incarcerated in late February of 2004 for a second violation of law, and the probation for the prior convictions was revoked.
¶ 4 In the meantime, Petitioners married in late January of 2004. They filed their application for adoption without Father's consent on April 13, 2005. The application alleged that Father's consent was not required under 10 O.S.2001 § 7505-4.2(B)(1)[1] and 10 O.S.2001 § 7505-4.2(H)(1).[2] At that time, Father was still incarcerated. He remained incarcerated until December 17, 2005, and appeared and testified at the February 3, 2006 hearing on the application.
¶ 5 Father claimed that the minor child was eligible for enrolled membership in the Muscogee (Creek) Nation due to his own enrollment[3] and that, as a consequence, the ICWA applied. Both Petitioners and Father, in their respective closing arguments, agreed that Petitioners were required to prove the factual elements of their application by "clear and convincing evidence." However, the trial court imposed a "beyond a reasonable doubt" standard, concluding that it was required by the ICWA, and denied Petitioners' application.
¶ 6 At the outset, we must reject Petitioners' suggestion that because a stepparent sought to adopt, the trial court proceedings herein were ones "springing out of a divorce action" and are therefore exempt from the ICWA under 25 U.S.C. § 1903(1). The parties to a divorce are the husband and wife seeking to dissolve the marital union, not a subsequent spouse of one of them who has become a stepparent. Proceedings for adoption without consent are not matters "springing out of a divorce action" but instead are independent statutory proceedings.
¶ 7 Moreover, a stepparent is not "one of the parents" whose claim is one "springing out of a divorce action" under the ICWA because under the definitions set forth in 25 U.S.C. § 1903(2), a stepparent is specifically defined as one of the persons who qualifies as an "extended family member." An "extended family member" is not one of the parents.
¶ 8 Petitioners ask that this Court "only make a determination that ICWA should not apply to a step parent adoption, because the child's custodial biological parent who is participating in the adoption process, [sic] continues to have the fundamental right to determine if his/her child shall participate in any Indian heritage." This argument is too restrictive a view of the process and ignores that the federal statutory scheme recognizes rights of tribes, Indian parents, and an Indian child's extended family under tribal customs when dealing with the custody of an Indian child.[4]
*309 ¶ 9 We also must reject the suggestion by Petitioners based upon In re B.R.W., 2003 OK CIV APP 92, 78 P.3d 1243, that the ICWA does not apply. B.R.W. applied the Indian family exception described in In the Matter of Adoption of D.M.J, 1985 OK 92, 741 P.2d 1386. The continued viability of that exception was rejected in In the Matter of Baby Boy L, 2004 OK 93, 103 P.3d 1099, and the Court expressly overruled D.M.J. and several other cases applying that exception. Consequently, the determination of the non-applicability of the ICWA due to the Indian family exception in B.R.W., since explicitly rejected, does not advance the analysis here.
¶ 10 It is undisputed that R.L.A. qualifies as an Indian child as that term is defined in both the Oklahoma Indian Child Welfare Act (OICWA) and ICWA. See 10 O.S.2001 § 40.2(2) and 25 U.S.C. § 1903(4). A child custody proceeding is defined, under § 1903(1)(ii), as including and meaning "any action resulting in the termination of the parent-child relationship" as well as, under § 1903(1)(iv), "any action resulting in a final decree of adoption."
¶ 11 The Legislature has provided in the OICWA that with the exceptions of "[a] child custody proceeding arising from a divorce proceeding," 10 O.S.2001 § 40.3(A)(1), or one from an adjudication of delinquency "unless there has been a request for termination of parental rights," 10 O.S.2001 § 40.3(A)(2), the OICWA "applies to all child custody proceedings involving any Indian child." 10 O.S. 2001 § 40.3(A). Further, the OICWA provides that it "applies to all state voluntary and involuntary child custody court proceedings involving Indian children, regardless of whether or not the children involved are in the physical or legal custody of an Indian parent or Indian custodian at the time state proceedings are initiated," 10 O.S.2001 § 40.3(B). (Emphasis added.) However, save and excepting when an emergency removal of an Indian child occurs, the OICWA does not specify the burden of proof for proceedings.[5] The expressed focus of the OICWA is to "ensure that the intent and provisions of the federal Indian Child Welfare Act are enforced." 10 O.S.2001 § 40.1. Thus, we must look to the ICWA to discover any increased burden of proof on Petitioners, and the ICWA was the basis of the trial court's decision.
¶ 12 In order to obtain an order determining a child eligible for adoption without the consent of a natural parent, the prospective adoptive parents have the burden of proving the existence of one or more of the statutory grounds for such an order, as delineated in 10 O.S.2001 § 7505-4.2 by clear and convincing evidence. Merrell v. Merrell, 1985 OK 107, 712 P.2d 35. The question presented here is whether individuals seeking to adopt an "Indian child," as defined in the ICWA, must be held to a higher standard of proof on the facts supporting those grounds.
*310 ¶ 13 The conclusion that Petitioners had a "beyond a reasonable doubt" burden of proof on the factual questions necessary to prove the grounds asserted in their application must be premised, if at all, on the language of 25 U.S.C. § 1912(f), which provides:
No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
¶ 14 Any reasonable grammatical reading of this statute yields the conclusion that it only requires "evidence beyond a reasonable doubt, including testimony of qualified expert witnesses" to demonstrate "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." It is silent concerning the burden of proof on other issues in a termination case.
¶ 15 Because no provisions of the ICWA displace the burden of proof on other issues, we can find no proper basis for imposing a higher standard of proof on Petitioners than they would have if this case did not involve an Indian child. In so concluding, we join the courts of numerous other states, which have held that the state-law mandated burden of proof is applicable to state law requirements for termination and that the burden of proof provided in § 1912(f) applies only to the specific factual determination required by that section. See Termination of Parental Rights to Daniel R.S., 286 Wis.2d 278, 706 N.W.2d 269 (2005).[6]
¶ 16 We reach this conclusion aware of the provisions of OUJI-Juv. No. 5.23, and similar Uniform Jury Instructions for Juvenile Cases, which would require the State to prove all of the elements of a termination case beyond a reasonable doubt where the ICWA is applicable. The drafting committee's premise for requiring a unitary burden of proof is unconvincing, and to some extent inaccurate.
¶ 17 In its Introductory Note to Chapter Five of the Uniform Jury Instructions for Juvenile Cases, which prefaces the instructions concerning ICWA cases, the committee states:
Section 1912(f), supra, specifies a beyond a reasonable doubt standard of proof for termination of parental rights proceedings. A number of other jurisdictions use a dual standard of proof in ICWA cases in which a clear and convincing standard is applied to the state law requirements for termination of parental rights and the reasonable doubt standard is applied only to the requirement in 25 U.S.C. § 1912(f) that continued custody by the parent is likely to result in serious emotional or physical damage to the child. E.g., In re H.A.M., 25 Kan.App.2d 289, 961 P.2d 716, 719 (1998). The prevailing practice in Oklahoma trial courts has been to use the reasonable doubt standard for both the state law requirements for termination of parental rights and the requirements in 25 U.S.C. § 1912(f), however. In addition, in In the Matter of T.L., 2003 OK CIV APP 49, ¶ 15, 71 P.3d 43, the Oklahoma Court of Civil Appeals applied the reasonable doubt standard to both the requirements in 25 U.S.C. § 1912(f) and the Oklahoma state law requirements that the parent failed to correct conditions leading to adjudication and that the child had been in foster care for 15 of the 22 months preceding the filing of the termination proceedings. Using the reasonable doubt standard for both the state law requirements and the requirements in 25 U.S.C. § 1912(f) avoids the difficulty of explaining different standards of proof to the jury, and is therefore less confusing to the jury. Applying the higher reasonable doubt standard also gives greatest effect to the ICWA, and it is therefore less likely to result in reversal of a termination of parental rights decision than applying the lower clear and convincing evidence standard. Accordingly, the reasonable doubt standard is used in these *311 instructions for both the state law requirements and the requirements in 25 U.S.C. § 1912(f).
In Re Oklahoma Uniform Jury Instructions for Juvenile Cases, 2005 OK 12, 116 P.3d 119, 163.
¶ 18 The first sentence of that note is not an accurate reading of § 1912(f), for as noted above, it does not "specify" a beyond a reasonable doubt "standard of proof" for termination cases. It "specified" that burden only for a particular determination that section requires to be made in those cases. Had Congress intended to apply that burden of proof to all issues in termination cases, it would have done so.
¶ 19 Nor are we persuaded that the case from another division of this Court cited by the drafting committee, In the Matter of T.L., 2003 OK CIV APP 49, 71 P.3d 43, constitutes a holding that the beyond a reasonable doubt standard must be applied to issues other than the determination required by § 1912(f). The T.L. Court was not called upon to decide the issue presented here, and the opinion contains no analysis of the dual burden of proof argument and case law nor of the statutory language. To the extent T.L. may be read as approving the application of a beyond a reasonable doubt burden of proof to state-law mandated issues in a termination case, we respectfully decline to follow it.
¶ 20 Finally, the note suggests a unitary burden of proof will be less confusing to the jury and less likely to result in reversal on appeal. We are not aware of any basis for treating one set of litigants and a child differently than others, absent controlling case law or a statute, merely because it will be easier to decide the case. The members of Oklahoma juries are perfectly capable of making the precise determination required by § 1912(f) based upon proof beyond a reasonable doubt, while all other issues are covered by a clear and convincing evidence burden of proof.[7]
¶ 21 Petitioners were entitled to prevail on their application if they presented evidence to support the grounds asserted in that application which the trial court found to be clear and convincing. The trial court erred in applying a beyond a reasonable doubt burden of proof to the issue presented by this application, and its order must be reversed.
¶ 22 Although this is an equitable proceeding, and therefore we should enter the order the trial court should have entered, we may do so only where it is possible. See Matter of Estate of Bartlett, 1984 OK 9, 680 P.2d 369. It is not possible or appropriate in a fact-dependent case such as this where the trial court has not evaluated the evidence of those facts under the correct burden of proof. Moreover, we may not simply grant Petitioners the relief they requested from the trial court by accepting the assertion contained in their brief that the trial court stated it would have granted their application if it applied a clear and convincing evidence burden of proof. Petitioners cite no place in the record where such a statement appears, and we can find nothing in the record to support their assertion.
¶ 23 Although, as concluded in Merrell, an order determining a child eligible for adoption without the consent of a parent does not result in a termination of that parent's parental rights, we need not determine, at this time, whether such an order, or even a final order for adoption is a "termination of parental rights" as contemplated by 25 U.S.C. § 1912(d)[8] and § 1912(f).[9]
*312 ¶ 24 The trial court's order is reversed. The case is remanded for further proceedings in accordance with views expressed in this opinion.
REVERSED AND REMANDED
BUETTNER, C.J., and MITCHELL, P.J., concur.
NOTES
[1] This subsection provides, in pertinent part:

B. Consent to adoption is not required from a parent who, for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of a child . . ., has willfully failed, refused, or neglected to contribute to the support of such minor:
1. In substantial compliance with an order entered by a court of competent jurisdiction adjudicating the duty, amount, and manner of support.
[2] This subsection provides: "Consent to adoption is not required from a parent who fails to establish and/or maintain a substantial and positive relationship with a minor for a period of twelve (12) consecutive months out of the last fourteen (14) months immediately preceding the filing of a petition for adoption of the child."
[3] Tribal notification was not at issue. The Muscogee (Creek) Nation was notified of the proceedings and stated, in a January 30, 2006 letter, that it "will consent to and support" the adoption of the minor child.
[4] In addition, when enacting the ICWA, Congress specifically noted that an "alarmingly high percentage" of Indian children were being placed in non-Indian homes, 25 U.S.C. § 1901(4), and, in 25 U.S.C. § 1902, Congress declared "it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" by establishing "minimum Federal standards" for the placement of Indian children into "adoptive homes which will reflect the unique values of Indian culture." The request by Petitioners essentially asks the courts to ignore the stated policies and findings of Congress when a stepparent is involved in adoption proceedings. No authority for this proposition is given, and we will not create such an exception in derogation of the expressions by Congress via the judicial process.
[5] For an emergency removal, the OICWA provides that "clear and convincing evidence and the testimony of at least one qualified expert witness" must support the trial court's determination that "custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage" for a pre-adjudicatory custody order for the emergency removal of an Indian child from a parent or Indian custodian to remain in effect for more than thirty days, although such a pre-adjudicatory custody order may be extended for an additional period of sixty days for "good and sufficient cause shown," 10 O.S.2001 § 40.5(B). Similarly, the ICWA provides that "[n]o foster care placement" may be ordered in an involuntary proceeding "in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e).
[6] This well-reasoned opinion includes, at Footnote 62 on page 321, citations to other states which have adopted a dual burden of proof in ICWA cases. Our research has revealed no state which has squarely addressed this issue and reached an opposite conclusion.
[7] In Re Oklahoma Uniform Jury Instructions for Juvenile Cases, 2005 OK 12, ¶ 2, 116 P.3d 119, requires "all trial courts in Oklahoma" to use the uniform instruction "if the court determines that the subject of the instructions would be appropriate in the particular matter on trial and unless the trial court determines that such recommended instruction does not accurately state the law." If a trial court declines to use a uniform instruction, it must state the reasons for doing so on the record. Although the order does not require this appellate Court to do so, this opinion adequately explains our reasons for declining to follow the instruction.
[8] This subsection provides:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
[9] It might be argued that Congress' choice to separately include "any action resulting in the termination of the parent-child relationship," 25 U.S.C. § 1903(1)(ii), and "any action resulting in a final decree of adoption," 25 U.S.C. § 1903(1)(iv), in the definition of "child custody proceeding" indicates that an adoption case would not be included within "any action resulting in the termination of the parent-child relationship."