195 P.3d 192

**VALERIE M., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, Kaydee V., Randy V., Zachary V., Appellees.**

**No. 1 CA–JV 07–0033.**

Court of Appeals of Arizona, Division 1, Department A.

June 17, 2008.

Review Granted Oct. 28, 2008.

Terry Goddard, Attorney General By William V. Hornung, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Sandra L. Massetto, Phoenix, Attorney for Appellant.

## OPINION

HALL, Judge.

¶ 1 Following a jury trial, the juvenile court issued an order terminating the parental rights of Valerie M. (Mother) as to her children Kaydee V., Randy V., and Zachary V. On appeal, Mother asserts that the burden-of-proof jury instructions violated the Indian Child Welfare Act (ICWA or the Act), 25 U.S.C. sections 1901–1963 (1978), and Arizona Rule of Procedure for the Juvenile Court 66(C). We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The facts relevant to the issue on appeal are undisputed. The children are members of the Cherokee Tribe and subject to the Act. On February 25, 2005, the children's paternal grandmother filed a dependency petition alleging that the children were dependent as to Mother. At a mediation hearing held April 1, 2005, the Arizona Department

of Economic Security (ADES) requested to substitute for paternal grandmother as petitioner on the dependency proceeding, alleging that the children were dependent as to Mother and biological father (Father). On May 13, 2005, the juvenile court found, by a preponderance of the evidence, that the children were dependent as to Mother and Father. Two months later, the Cherokee Nation intervened in the matter. The juvenile court continued the dependency disposition hearing to receive testimony from an ICWA caseworker. The juvenile court then found the children were dependent as to Mother and Father by clear and convincing evidence.

¶ 3 On June 7, 2006, ADES filed a motion seeking termination of Mother's and Father's parental rights to the children. ADES alleged three statutory bases for termination: (1) Mother and Father were unable to discharge their parental responsibilities because of mental illness, mental deficiency, and/or a history of chronic drug abuse, with reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period pursuant to Arizona Revised Statutes (A.R.S.) section 8–533(B)(3) (Supp.2007); (2) the children had been in an out-of-home placement pursuant to a court order for a cumulative period of nine months or longer and Mother and Father had substantially neglected or willfully refused to remedy the circumstances causing the out-of-home placement pursuant to § 8–533(B)(8)(a); and (3) the children had been in an out-of-home placement pursuant to a court order for a cumulative period of fifteen months or longer and Mother and Father had been unable to remedy the circumstances causing the out-of-home placement and there was a substantial likelihood that they would not be capable of exercising proper and effective parental care and control in the near future pursuant to § 8–533(B)(8)(b).

¶ 4 At her initial severance hearing, Mother entered a denial and timely requested a jury trial. Father failed to appear at his initial severance hearing and an official from the Cherokee Nation testified that the Nation was in agreement with the plan of severance and adoption. The juvenile court then proceeded with Father's severance trial. After receiving testimony and exhibits, the juvenile court found, beyond a reasonable doubt, that the State proved the statutory bases for termination, that the State made active efforts to prevent the "break-up of the Indian family," that Father's continued custody of the children would likely result in serious emotional or physical damage to the children, and that termination of the parent-child relationship was in the children's best interests. Based on these findings, the juvenile court terminated Father's parental rights.[1]

¶ 5 Before trial, ADES filed a motion in limine regarding the burden of proof required in Mother's termination case, in which it asserted that the "beyond a reasonable doubt" standard applied only to the findings required by the Act, that the "clear and convincing evidence" standard applied to the findings on state statutory termination grounds, and that the "preponderance of the evidence" standard applied to the best interests determination. The purpose of the motion was to preclude any party from making any different statement to the jury regarding the burdens of proof. ADES contemporaneously submitted a requested jury instruction incorporating these three differing standards of proof. Mother did not disagree with the State's motion and the juvenile court granted it.

¶ 6 Two days later, however, during a mid-trial discussion of the final jury instructions prepared by the juvenile court, Mother's attorney argued that the "beyond a reasonable doubt" standard should apply to all of the jury's findings. The juvenile court overruled Mother's objection and the jury was instructed in relevant part as follows:

To terminate the parental rights of Valerie [M.] relating to [the children] in this case, you must:

1. find by clear and convincing evidence that at least one of the three grounds for termination (those grounds are "mental illness," "nine months time in care," and "fifteen months time in care") have been proven; and

---

1. Father has not appealed the termination of his parental rights.

2. find by a preponderance of the evidence that the termination of Valerie [M.'s] parental relationship to [the children] is in the children's best interest; and

3. find that the evidence has been proved beyond a reasonable doubt that;

a. the Department of Economic Security's Child Protective Services Division has made active efforts to provide Valerie [M.] with remedial services and rehabilitative programs that were designed to prevent the breakup of the Indian family and that these efforts have been unsuccessful, and

b. returning [the children] to the custody of Valerie [M.] would likely result in serious emotional or physical damage to the children, and this finding is supported by the testimony of a qualified expert witness.

¶ 7 The jury found: (1) by clear and convincing evidence that all three grounds for termination had been proven; (2) by a preponderance of the evidence that termination of the parent-child relationship was in each child's best interests; and (3) beyond a reasonable doubt that ADES made active efforts to provide Mother with remedial services to prevent the break-up of the family and that returning the children to Mother's custody would likely result in serious emotional or physical damage to the children, a finding supported by expert testimony.

¶ 8 The juvenile court entered a signed order setting forth the jury's findings and terminating Mother's parental rights to the children. Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8–235(A) (2007) and Arizona Rule of Procedure for the Juvenile Court 88(A).

### DISCUSSION

¶ 9 As her sole issue on appeal, Mother argues that the juvenile court erred by failing to instruct the jurors that the "beyond a reasonable doubt" burden of proof applied to each of their findings. Specifically, Mother contends that the Act requires that the State prove beyond a reasonable doubt the statutory grounds for termination and that termination is in the children's best interests.

■■■ ¶ 10 We review jury instructions as a whole to determine whether they accurately reflect the law. *Dawson v. Withycombe,* 216 Ariz. 84, 105, ¶ 63, 163 P.3d 1034, 1055 (App.2007). "We will not overturn a jury verdict on the grounds of an erroneous instruction unless there is substantial doubt as to whether the jury was properly guided in its decision." *Id.* To determine whether the juvenile court properly instructed the jury, we first examine the burden of proof requirements set forth in the Act, which we review de novo as a matter of law. *See Michael J., Jr. v. Michael J., Sr.,* 198 Ariz. 154, 156, ¶ 7, 7 P.3d 960, 962 (App.2000).

■■■ ¶ 11 When construing a statute, our primary goal is to determine and give effect to the intent of the Legislature. *In re Estate of Jung,* 210 Ariz. 202, 204, ¶ 12, 109 P.3d 97, 99 (App.2005). Initially, we consider the language of the statute itself. *Id.* "If the statutory language is unambiguous, we must give effect to the language and do not use other rules of statutory construction in its interpretation." *Primary Consultants, L.L.C. v. Maricopa County Recorder,* 210 Ariz. 393, 399, ¶ 24, 111 P.3d 435, 441 (App.2005).

¶ 12 The United States Congress enacted the Act to establish minimum standards "for the removal of Indian children [2] from their families." 25 U.S.C. § 1902. Parental termination proceedings are governed by 25 U.S.C. § 1912(f), which provides:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

Under the unambiguous language of the statute, parental rights may not be terminated absent a finding that the continued custody of the child by the parent would result in

---

**2.** The Act defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).

serious emotional or physical damage to the child. By its express terms, § 1912(f) establishes that a finding of emotional or physical harm to the child must be supported by evidence beyond a reasonable doubt and that the supporting evidence must include the testimony of a qualified expert witness.

■ ¶ 13 Contrary to Mother's claims, the Act does not establish, or even mention, the appropriate standard of proof to be applied in evaluating state-law termination grounds or making state-mandated best interests determinations. Rather, § 1912(f) protects the stability and integrity of Indian families by requiring that the fact-finder make an additional finding beyond a reasonable doubt before the rights of any parent or custodian of an Indian child may be terminated. *See* 25 U.S.C. § 1902 (declaring "that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families"). We conclude, therefore, that § 1912(f)'s reasonable-doubt standard does not preempt the state-imposed burdens of proof for establishing termination grounds and best interests findings. *See Maricopa County Juv. Action No. JS–8287*, 171 Ariz. 104, 112, 828 P.2d 1245, 1253 (App. 1992) (stating that § 1912(f) imposes requirements "in addition to meeting the Arizona requirement that parental rights may only be terminated for a number of stated reasons").

¶ 14 Our conclusion is supported by courts in other states that have determined that separate burdens of proof apply to termination findings mandated by the Act and those that must be made pursuant to state law, commonly referred to as the "dual burden of proof" requirement. *See, e.g., In re J.R.B.*, 715 P.2d 1170, 1172 (Alaska 1986) ("[ICWA's] plain language requires only a finding beyond a reasonable doubt of likely harm to the child with continued custody by the parent or Indian custodian."); *People ex rel. C.A.J.*, 709 P.2d 604, 606 (Colo.App.1985) (applying dual burden of proof, requiring "proof beyond a reasonable doubt" that continuation of custody would cause child harm, but only "clear and convincing evidence" of the state termination grounds); *In re Denice F.*, 658 A.2d 1070, 1072 (Me.1995) ("A dual burden of proof—one federal, one state—thus exists in cases involving the termination of parental rights to an Indian child."); *In re Elliott*, 218 Mich.App. 196, 554 N.W.2d 32, 38 (1996) (applying dual burden of proof, requiring proof "beyond a reasonable doubt" that continuation of custody would cause child harm, but only "clear and convincing evidence" of the state termination grounds); *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55, 60–61 (2008) (declining to apply "beyond a reasonable doubt" burden of proof to state best interests determination); *In re Bluebird*, 105 N.C.App. 42, 411 S.E.2d 820, 823 (1992) ("[ICWA] does not require that the North Carolina statutory grounds to terminate parental rights be proven beyond a reasonable doubt. Rather, a dual burden of proof is created in which the state provisions and federal provisions must be satisfied separately."); *In re M.S.*, 624 N.W.2d 678, 681, ¶ 4 (N.D.2001) (applying dual burden of proof, requiring proof "beyond a reasonable doubt" that continuation of custody would cause child harm, but only "clear and cogent convincing evidence" of the state termination grounds); *In re Adoption of R.L.A.*, 147 P.3d 306, 310, ¶ 15 (Okla.App.2006) (holding "that the state-law mandated burden of proof is applicable to state law requirements for termination and that the burden of proof provided in § 1912(f) applies only to the specific factual determination required by that section."); *K.E. v. State*, 912 P.2d 1002, 1004 (Utah App.1996) ("The ICWA does not require that Utah's statutory grounds for termination of parental rights be proven beyond a reasonable doubt.... The ICWA requires a specific finding for termination proceedings in addition to those required by state law and imposes a separate burden of proof for that finding."); *In re Dependency of Roberts*, 46 Wash.App. 748, 732 P.2d 528, 531 (1987) (applying dual burden of proof, requiring proof "beyond a reasonable doubt" that continuation of custody would cause child harm, but only "clear and convincing evidence" of the state termination grounds); *In re Interest of D.S.P.*, 157 Wis.2d 106, 458 N.W.2d 823, 829 (1990) (applying dual burden of proof, requiring "proof beyond a reasonable doubt" that

continuation of custody would cause child harm, but only "clear and convincing evidence" of the state termination grounds). As noted by *In re Adoption of R.L.A.*, "no state which has squarely addressed this issue [has] reached an opposite conclusion." 147 P.3d at 310 n. 6.[3]

▮ ¶ 15 Neither does Arizona's statutory scheme governing termination of the parent-child relationship independently require that the grounds for termination set forth in § 8–533(B) be proven beyond a reasonable doubt in cases involving Indian children. Instead, both A.R.S. §§ 8–537(B) and –863(B) (2007)[4] permit the court to terminate a person's parental rights based on "clear and convincing evidence" that one or more of the statutory grounds have been established without distinguishing between Indian and non-Indian children. Similarly, we do not perceive that the state-mandated finding regarding the best interests of children required by A.R.S. § 8–533(B), *see Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22, 110 P.3d 1013, 1018 (2005) (explaining that the "preponderance of the evidence" standard applies to the best interests determination), should be determined under a heightened standard of proof for Indian children.

¶ 16 Mother nonetheless cites A.R.S. § 8–872(F) (Supp.2007), governing permanent guardianships, as evidence that the Arizona Legislature intended to impose the "beyond a reasonable doubt" standard on all findings in ICWA cases. Section 8–872(F) provides that the "clear and convincing evidence" standard applies to permanent guardianship cases, except "[i]n any proceeding involving a child who is subject to the federal Indian child welfare act of 1978, [in which case] the person who files the motion has the burden of proof by beyond a reasonable doubt." According to the House Fact Sheet relating to H.B.2062, which the Legislature enacted as A.R.S. § 8–525.01 (1994) and later renumbered as § 8–872, 1994 Ariz. Sess. Laws, ch. 335, § 3; 1999 Ariz. Sess. Laws, ch. 81, §§ 4, 21, the statute "specifies the grounds for proof of permanent guardianship and requires the grounds to comply with federal law in any proceeding involving a child subject to the Federal Indian Child Welfare Act of 1978." House Fact Sheet H.B.2062, 41st Leg., 2nd Reg. Sess. (Ariz.1994). The legislative history does not reflect that the Legislature acted because it desired to impose a higher standard of proof on state termination grounds independent of the Act; rather, it appears that the Legislature amended the statute to bring it into compliance with what it believed was required by the Act.[5]

3. In *Pima County Juvenile Action No. S–903*, we held that the Arizona juvenile court erred by not deferring to tribal court jurisdiction under the Act, 130 Ariz. 202, 206–07, 635 P.2d 187, 191–92 (App.1981), and that, "even assuming that the Arizona court had jurisdiction," the sole ground for termination (abandonment) was not proven, *id*. at 207–08, 635 P.2d at 192–93. We also stated that, even if a state court properly retains jurisdiction, "the tribe is protected against the possibility of state court bias against tribal culture" because, in part, "the parent-child relationship can be terminated only by a showing of parental unfitness beyond a reasonable doubt. 25 U.S.C.A.1912(f)." *Id*. at 204, 635 P.2d at 189. The court's resolution of the issues before it did not require it to "squarely address" the dual burden of proof issue and, in any event, its summary of § 1912(f) was not accurate.

4. Section 8–537(B) applies to termination petitions, which may be filed by "[a]ny person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative, a foster parent, a physician, the department of economic security or a private licensed welfare agency[.]" A.R.S. § 8–533(A). Section 8–863(B) applies to motions for termination of

parental rights that are filed when ordered by a court at a permanency hearing conducted after a dependency disposition. *See* A.R.S. § 8–862(D) (Supp.2007). ADES initiated the termination proceedings in this case by filing a motion pursuant to § 8–862(D)(1).

5. The Act does not specifically address the requisite burden applicable to a "permanent guardianship." However, under the Act, "foster care placement" orders must meet a clear and convincing standard of proof. *See* 25 U.S.C. § 1912(e). A "foster care placement" includes "any action removing an Indian child from its parent or Indian custodian for temporary placement in … the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated[.]" 25 U.S.C. § 1903(1)(i). In requiring that the higher beyond-a-reasonable-doubt standard be met before a permanent guardianship could be ordered in an ICWA case, the Legislature apparently believed that a permanent guardianship proceeding was more akin to a termination proceeding than a foster care placement under the Act. *But see In re Guardianship of J.C.D.*, 686 N.W.2d 647, 648–

¶ 17 As we have already mentioned, the Legislature has not acted in a similar manner to amend the statutes governing parental terminations. Instead, the plain language of those statutes reflects that the "clear and convincing evidence" standard should be applied, without identifying any exceptions. It is perhaps incongruous that the rights of parents of an Indian child can be severed based on a lesser standard of proof than that necessary to establish a permanent guardianship for that same child. Although, whenever possible, we attempt to harmonize statutes that relate to the same matter, we cannot do so here because §§ 8–872(F), –537(B), and –863(B) each is unambiguous in identifying the requisite standard of proof for guardianship and termination proceedings, respectively. *See In re Timothy M.*, 197 Ariz. 394, 399, ¶ 20, 4 P.3d 449, 454 (App.2000) (stating "[t]he doctrine[ ] of *in pari materia* ... appl[ies] only when a statute is deemed to be ambiguous."). "It is not in the court's power to change legislative enactments; our duty is to interpret the law and apply it as written." *Braden Trust v. County of Yuma*, 205 Ariz. 272, 278, ¶ 29, 69 P.3d 510, 516 (App.2003). If the "beyond a reasonable doubt" standard is to be applied to state grounds for termination in cases involving children subject to ICWA, "that change must come from the legislature." *Id.*

¶ 18 Finally, Mother contends that the "beyond a reasonable doubt" standard must nonetheless be applied to all findings in an ICWA parental termination case as prescribed by Arizona Rule of Procedure for the Juvenile Court (Rule) 66(C):

> The moving party or petitioner [in a termination adjudication hearing] has the burden of proving the allegations contained in the motion or petition by clear and convincing evidence or, in the case of an Indian child, beyond a reasonable doubt. In addition, if the child is an Indian child, the moving party or petitioner must also prove, beyond a reasonable doubt, including testimony from a qualified expert witness, that continued custody of the child by

the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. The petitioner must prove beyond a reasonable doubt that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful.

ADES contends that the clear and convincing standards of proof established by A.R.S. §§ 8–537(B) and –863(B) control over Rule 66(C)'s higher standard.

¶ 19 We review the interpretation of rules de novo. *State v. Hansen*, 215 Ariz. 287, 289, ¶ 6, 160 P.3d 166, 168 (2007). We construe rules as we do statutes, giving effect to the plain meaning unless the language is ambiguous, *id.* at 289, ¶ 7, 160 P.3d at 168, or would create an absurd result, *State ex rel. Romley v. Superior Court*, 168 Ariz. 167, 169, 812 P.2d 985, 987 (1991). "Rules and statutes should be harmonized wherever possible and read in conjunction with each other." *Hansen*, 215 Ariz. at 289, ¶ 7, 160 P.3d at 168 (internal quotation omitted).

¶ 20 As an initial matter, we conclude that the clear and convincing burden-of-proof requirements for termination cases found in A.R.S. §§ 8–537(B) and –863(B) cannot be harmonized with Rule 66(C), which unambiguously requires that the moving party prove the allegations of a termination petition beyond a reasonable doubt in cases involving Indian children. Neither can we say that Rule 66(C) is absurd. Its requirement that the moving party in a termination hearing involving an Indian child prove the statutory ground(s) beyond a reasonable doubt was added when the current juvenile rules were promulgated by the Arizona Supreme Court in 2000. *See* Supreme Court Order No. R–00–0004, effective January 1, 2001. As a significant feature of the new rules, all provisions of ICWA were incorporated by reference, Rule 8(B), and the court was required to make "all findings pursuant to the standards and burdens of proof as required by the Indian Child Welfare Act[,]" Rule 8(C).

49, ¶¶ 4, 8–10 (S.D.2004) (finding that the Act was applicable to a permanent guardianship proceeding because, although "clearly not a termi-

nation proceeding" under the Act, it fell within the definition of a "foster care placement").

Furthermore, as explained by the comment to Rule 8(C), "[a]ny conflict between these rules and the Act shall be resolved in favor of the Act." Rule 66(F)(2)(e), which pertains to findings and orders in termination hearings, consistently requires the court to "make findings pursuant to the standards and burdens of proof as required by the Act." As we have already concluded above, however, although the Act requires that the additional finding mandated by § 1912(f) be proven beyond a reasonable doubt, it does not otherwise impose any particular burden-of-proof requirement in termination cases. Indeed, the Act permits states to provide higher standards of protection than required under the Act. 25 U.S.C. § 1921. Therefore, the higher burden-of-proof requirement in Rule 66(C) is neither inconsistent with the overall tenor of the 2000 amendments nor is it contrary to the Act. Under these circumstances, we cannot say that Rule 66(C) is necessarily absurd or clearly contrary to the supreme court's intent.

■■■ ¶ 21 We therefore turn to ADES's argument that A.R.S. §§ 8–537(B) and –863(B) govern the burden of proof in termination cases. "[W]hen a statute and rule conflict, we traditionally inquire into whether the matter regulated can be characterized as substantive or procedural, the former being the legislature's prerogative and the latter the province of [the supreme court]." *Hansen*, 215 Ariz. at 289, ¶ 9, 160 P.3d at 168 (citing Ariz. Const. art. 6, § 5(5)) (granting supreme court "[p]ower to make rules relative to all procedural matters in any court."); *see also* A.R.S. § 12–109(A) (2003) (providing that rules promulgated by the supreme court "shall not abridge, enlarge, or modify substantive rights of a litigant"). Because the promulgation of a rule by the Arizona Supreme Court is not a prior judicial determination of its validity, we have the power as an intermediate appellate court to pass upon its validity in the case before us. *Scheehle v. Justices of the Supreme Court*, 211 Ariz. 282, 298, 120 P.3d 1092, 1108 (2005).

¶ 22 "A precise distinction between substantive and procedural rights or interests has proven elusive." *In re Shane B.*, 198 Ariz. 85, 88, ¶ 9, 7 P.3d 94, 97 (2000). Although there is no precise definition of either term, "it is generally agreed that a substantive law creates, defines and regulates rights while a procedural one prescribes the method of enforcing such rights or obtaining redress." *Allen v. Fisher*, 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App.1977). In the context of the insanity defense, our supreme court has determined that the burden of proof (as used in the sense of the quantum of proof necessary to prevail) is a substantive and not a procedural requirement. *State v. Fletcher*, 149 Ariz. 187, 191–92, 717 P.2d 866, 870–71 (1986); *see also State v. Gilfillan*, 196 Ariz. 396, 404, ¶ 27, 998 P.2d 1069, 1077 (App.2000) (rejecting defendant's claim that A.R.S. § 13–1421 violates the doctrine of separation of powers by establishing "clear and convincing" evidence as the quantum of proof necessary for the admission of specific acts of the victim under Arizona's Rape Shield Law: "[T]he burden of proof is substantive, not procedural."). Likewise, we conclude that the quantum of proof required to justify the termination of parental rights is substantive because it regulates a right rather than prescribes the method by which the right may be enforced. Accordingly, we determine that Rule 66(C) is invalid insofar as it imposes a higher burden of proof in termination cases involving Indian children than required by §§ 8–537(B) and –863(B).

¶ 23 In summary, the trial court correctly instructed the jury on the applicable burdens of proof pertaining to the state statutory termination grounds and the best interests determination.[6]

---

6. Mother also argues that the juvenile court was bound by the law of the case doctrine to provide the "beyond a reasonable doubt" instruction she requested because the court used that standard in terminating Father's parental rights. We disagree. As relevant here, the law of the case doctrine is a "procedural doctrine rather than [ ] a substantive limitation on the court's power." *Powell–Cerkoney v. TCR–Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278, 860 P.2d 1328, 1331 (App.1993). Thus, it does not preclude reconsideration of an issue previously decided. *Id.* at 279, 860 P.2d at 1332. Moreover, the rule does not apply when "the issue was not actually decided in the first decision." *Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 483, 720 P.2d 81, 84 (1986). The record does not reflect that there was any discus-

## CONCLUSION

¶ 24 Based on the foregoing, we affirm the juvenile court's termination order.

CONCURRING: MAURICE PORTLEY, and JOHN C. GEMMILL, Judges.

sion or formal determination as to the evidentiary standard the juvenile court would apply in Father's parental termination case. Instead, following a bench trial, the juvenile court simply entered its findings that the State had proven the statutory termination grounds and the best interests of the children "beyond a reasonable doubt."