NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EDDIE B., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.B., *Appellees*.

No. 1 CA-JV 17-0329
FILED 1-9-2018

Appeal from the Superior Court in Navajo County
No. S0900JD201400012
The Honorable Michala M. Ruechel, Judge

**REVERSED AND REMANDED**

COUNSEL

Law Office of Elizabeth M. Hale, Show Low
By Elizabeth M. Hale
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jennifer M. Perkins joined.

---

**T H O M P S O N**, Judge:

¶1           Eddie B. (father) appeals the juvenile court's order appointing Hallie H. as permanent guardian of father's son, E.B.  For the reasons stated below, we reverse the court's order.

**FACTUAL AND PROCEDURAL HISTORY**

¶2           Father is the biological parent of E.B., born February 2007.[1] Father is hearing impaired, and uses sign language and vocal intonations to communicate.   E.B. is not hearing impaired.

¶3           The Department of Child Safety (DCS) removed E.B. from his home, with father and his mother, in March 2014.  E.B. had reportedly been exposed to domestic violence between his parents, including an incident where father threatened suicide, pointed a gun to his own head, and shot a couch that was opposite from where E.B. and his mother were sitting.

¶4           After he was placed in DCS's care, E.B. was removed to live with his maternal aunt, Hallie H.  At the time of his removal, E.B. was diagnosed with chronic anorexia; family stress; chronic anxiety; failure to thrive; and being underweight.  E.B.'s low weight and issues thriving were "attributed in part to anxiety which appeared to be exacerbated by [his] parents' behavior towards each other."  However, the juvenile court found there was no evidence of physical abuse towards E.B.  E.B. was adjudicated dependent as to father in August 2014.

¶5           E.B. has thrived since residing with his maternal aunt.  E.B.'s parents separated after his removal.  DCS assigned father a case plan to eliminate the need for E.B.'s out of home placement.

¶6           Pursuant to father's case plan, father was required to accept responsibility for his part in domestic violence; learn how his behavior was affecting E.B.; work with a therapist on both domestic violence and anger

---

[1]       Mother is not a party to this appeal.

issues; and show emotional stability and the ability to accept constructive criticism. After a psychological evaluation, the psychologist recommended that father receive individual counseling, work on his parenting skills with a parent aide, and have supervised visits with E.B.

¶7        DCS provided father with sign language interpreter services. DCS did not provide E.B. with services to enable him to continue to learn to sign after removal.

¶8        The case plan remained reunification throughout most of the dependency.   However, in the first week of December 2016, the juvenile court ruled that it was not an appropriate time to return the child to either parent, that it was "appropriate to change the case plan to guardianship by a relative[,]" with a target date for April 2017. The court also noted that it "[would] set a secondary plan of severance and adoption."

¶9        In late January 2017, E.B.'s guardian ad litem moved to have the juvenile court appoint Hallie H. as E.B.'s permanent guardian. Father objected to the permanent guardianship and a trial regarding the matter was set for April 7, 2017.   After the guardianship hearing, the juvenile court took the matter under advisement.   The court ultimately found that "guardianship is in the best interests of [E.B.]." Relying on Arizona Revised Statutes (A.R.S.) section 8-871 (2017)[2] (permanent guardianship of a child), the court ruled that: (1) [E.B.] had been in the custody of the prospective guardian for at least 9 months; (2) DCS had made reasonable efforts to reunify the family, but further efforts would be unproductive; and (3) the termination of parental rights was not in E.B.'s interest given his desire to have an ongoing relationship with his parents in a safe environment. *See id.* at § 8-871(A)(1)-(4).

¶10        Father timely appealed the juvenile court's order of permanent guardianship to Hallie H.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A) (2017), and 12-2101(A)(1) (2017).

## DISCUSSION

¶11        Father challenges the juvenile court's ruling that DCS made reasonable efforts to reunify the family, but further efforts would be unproductive. *See* A.R.S. § 8-871(A)(3).

---

[2]        We cite to the current version of the relevant statutes, unless revisions material to this decision have occurred.

**¶12**        In reviewing a juvenile court's order for permanent guardianship, we accept its findings of fact, unless those findings are unsupported by reasonable evidence. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). The finding of the requisite statutory grounds within the order must be supported by clear and convincing evidence. *See, e.g.*, A.R.S. § 8-872(G) (2017); *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997) (applying the clear and convincing evidence standard of review in case regarding permanent guardianship); *see also Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 155, 160, ¶ 15 (App. 2008) (the clear and convincing evidence standard of proof for statutory grounds is also applied in the analogous context involving severance of parental rights). The applicable standard of proof requires a showing establishing the statutory grounds to a degree of high or reasonably certain probability. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284-85, ¶ 25 (2005).

**¶13**        We will not reverse the guardianship order, unless it is clearly erroneous. *Jennifer B.*, 189 Ariz. at 555. A finding of "clearly erroneous" is warranted where, upon review of the entire evidence, we are left with a "definite and firm conviction that a mistake has been committed." *Park Cent. Dev. Co. v. Roberts Dry Goods, Inc.*, 11 Ariz. App. 58, 60 (1969) (internal quotation and citation omitted). Undoubtedly, a mistake has occurred where a belief or finding does not correspond with essential facts.

**¶14**        Father asserts his challenge to the subject statutory ground in two parts. First, he contends DCS failed to make reasonable efforts to reunite him and E.B. by not providing E.B. with "appropriate instruction in ASL" to facilitate communication between them which, father alleges, was "critical to the success" of DCS-ordered therapy. Second, father argues that the evidence did not meet the requisite standard of proof to support the statutory finding that further efforts to reunify father and E.B. would be unproductive.

**¶15**        We cannot find in father's favor on his first basis of contention. A showing of reasonable efforts need not be supported by a finding that DCS had provided a parent and child with "every conceivable service."[3] *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 15 (App. 2011) (quotation and citation omitted). Moreover, the juvenile court's guardianship order did not consider communication issues as between E.B. and father, but rather focused on whether father was addressing his own

---

[3]        The juvenile court found that DCS made reasonable efforts to provide services to father, including counseling; case management; visitation; interpreters; and parenting classes.

issues dealing with anger and domestic violence. As such, we affirm the juvenile court's ruling on this point.

¶16 We nonetheless find that the juvenile court erred as the evidence of record is insufficient to support its finding that further efforts to reunify father and E.B. would be unproductive.

¶17 The record indicates that as to father's fitness to be reunified with E.B., both DCS and the juvenile court were primarily concerned with the potential for domestic violence by father. They were specifically concerned about the likelihood that such violence would create an unsafe environment for E.B., father's ability to take responsibility for the violence, and his ability to control his anger.

¶18 In support of the court's "unproductive" finding, the record does establish that at certain visits with E.B. father was reportedly hostile, and on at least one occasion, in May 2016, allegedly "threatened the interpreter, the parent aide and frightened [E.B.]." Father also inconsistently engaged in counseling.

¶19 The juvenile court also found,

> Father has yet to accept responsibility for his violent behavior and its impact on his son. Instead claiming either that the child made up the incidents or misinterpreted the interactions between his parents due to their method of communicating due to their deafness.

However, the record does not fully support this finding. At trial, E.B.'s guardian ad litem questioned the assigned case aide regarding father's acceptance of responsibility. The case aide, who, as of December 14, 2016, oversaw supervised visitations at father's home testified that she believed father was "[v]ery much so" taking responsibility for his role in the situation that caused E.B. to be removed from the home.

¶20 Additionally, during the guardianship hearing, the assigned DCS case manager testified that father had not reached his case plan goals to be reunified with E.B. The same case manager also opined that it would not be beneficial to allow father more time, to evaluate his progress, before changing the case plan to permanent guardianship. Nonetheless, this case manager also conceded that the notes she received from the case aide, as of December 2016, indicated that there were no problems or concerns during visitations to suggest father was having anger issues or unable to manage his anger. The case manager however indicated that father was likely on

5

his best behavior because father had been videotaping the more recent visits.[4]

¶21 The subject case aide testified that recent visits had been going well, and DCS agrees that father's behavior had "finally improved" within the six months prior to the guardianship hearing. Additionally, the juvenile court found that "[t]he parent aide testified that she believes visits should be *unsupervised* even though [E.B.] has shown concerns about [f]ather's behavior during the visits and is told by the supervisor that [f]ather's actions are not anger but passionate." (Emphasis added.) In a December 2016 ruling, the juvenile court also noted that E.B.'s guardian ad litem "fe[lt] that [E.B. was] deliberately trying to sabotage visits (especially with dad) in order to remain in the current placement."

¶22 Furthermore, while the juvenile court found that mother and father continued to have "some" contact with each other, the two had separated since E.B.'s removal and were no longer living together. Accordingly, the primary source of domestic conflict, at least as of the time of the guardianship hearing, had been significantly eliminated.

¶23 Given the record of father's progress—despite the DCS case manager's skepticism—over the several months most immediately preceding the guardianship hearing, we do not agree that clear and convincing evidence supports the juvenile court's finding that further efforts would be unproductive. At best, based upon the evidence, we could make a preponderance of the evidence supposition in this regard, which, of course, is insufficient. We therefore reverse the juvenile court's apparently premature finding[5] on the issue. *See also Cochise Cty. Juv. Action No. 5666–J,* 133 Ariz. 157, 159 (1982) (indicating, albeit in the context of severance, that adjudications of permanency should be resorted to only in the most extreme cases).

---

[4] Father had requested the visits be videotaped.

[5] We do recognize that "[l]eaving the window of opportunity for remediation open indefinitely is not necessary," and the passage of time may justify the court's ruling. *Maricopa Cty. Juv. Action No. JS-501568,* 177 Ariz. 571, 577 (App. 1994).

## CONCLUSION

¶24      For the foregoing reasons, we reverse the juvenile court's order granting permanent guardianship to Hallie H., given father's contest. We remand the case for further proceedings consistent with this decision.

